UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 03-274 |
| WINSTON GILMORE | SECTION "B" |

## ORDER AND REASONS

Before the court are defendant Winston Gilmore's motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (Rec. Doc. 1596), the Government's opposition (Rec. Doc. 1604), and Gilmore's reply (Rec. Doc. 1612). Accordingly,

**IT IS ORDERED** that defendant's motion for compassionate release is **DENIED** for the reasons *infra*.

**Factual Background and Procedural History**

On October 26, 2024, Gilmore entered into a plea agreement for drug trafficking conspiracy (Count 1), conspiracy to commit violent crime in aid of racketeering (Count 2), carrying and using a firearm in relation to a drug trafficking scheme resulting in the death of Gerald Babino (Count 9), carrying and using a firearm in and during commission of a drug trafficking scheme leading to the attempted murder of Tyrion Steib and Damian Savage (Count 10), possession of a firearm as a felon (Count 11), violent crime in aid of racketeering murder of Anthony Cousin (Count 12), and possession of a firearm as a felon (Count 13). Rec. Doc. 1604 at 2 (citing Rec. Doc. 511 (Sealed Document)). A superseding indictment containing the same charges was brought on June 25, 2004. Rec. Doc. 1604 at 2 (citing Rec. Doc. 429). Gilmore pled guilty to Count 1, Count 2, Count 9, Count 10, Count 11, Count 12, and Count 13. *Id.* At sentencing Gilmore received life imprisonment for Counts 1, 2, 9, and 12. For Counts 11 and 13, Gilmore received a concurrent sentence of ten years. Rec. Doc. 1604 at 3. For Count 10, this Court

sentenced Gilmore to a sentence of ten years which "shall run consecutively to all other counts." *Id* (citing Rec. Doc. 1593).

**Law and Analysis**

    A. **Defendant's Request for Appointment of Counsel**

"The right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The court may appoint counsel if doing so would serve the interests of justice. *United States v. Robinson*, 542 F.3d 1045, 1052 (5th Cir. 2008). Appointment of counsel does not serve the interests of justice if a motion does not involve "complicated or unresolved issues." *United States v. Moore*, 400 Fed. App'x 851, 852 (5th Cir. 2010) (citing *to United States v. Robinson*, 42 F.3d 1045, 1052 (5th Cir. 2008). Compassionate release motions do contain complicated or unresolved issues. *United States v. Drayton*, No. 10-20018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020). Additionally, the interests of justice are not served by appointing counsel to a defendant who has proven capable of representing themselves *pro se* by providing adequate representation of his arguments. *United States v. Chambers*, 2021 WL 4311032, at *3 (E.D. La. Sept. 22, 2021) (internal citation omitted).

Though Gilmore insists that the adequacy of his motion should not be considered by this Court because his only assistance came from another inmate, Gilmore's motion is for compassionate release, which does not involve complex or unresolved issues. Rec. Docs. 1596 at 1; 1612 at 1. Gilmore has not presented information to indicate he would not be able to provide adequate representation of the law and facts of his case. Here, appointment of counsel would not serve the "interests of justice." *See Robinson*, 542 F.3d at 1052.

    B. **Standard of Review**

A defendant may file a motion for compassionate release after fully exhausting his administrative rights with the Bureau of Prisons ("BOP") or the lapse of 30 days from the receipt of his request by the warden of the defendant's facility, whichever happens earlier. *See* 18 U.S.C. §3582(c)(1)(A). Upon a proper request for compassionate release, the court may reduce a defendant's sentence if the court finds that "extraordinary and compelling circumstances" warrant such reduction and the sentencing factors contained in § 3553 supports a reduction. 18 U.S.C. § 3582(c)(1); *Ward v. United States*, 11 F.4th 354, 359-60 (5th Cir. 2021). The extraordinary and compelling reasons must be consistent with applicable policy statements made by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). The defendant has the burden of proving he is entitled to a reduction. *Ward*, 11 F.4th at 361 (internal citation omitted).

C. **Exhaustion of Administrative Remedies**

Before a court can consider a defendant's motion for compassionate release, a defendant must "fully [exhaust] all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf" or show a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See* 18 U.S.C. § 3582(c)(1)(A). Here, the Government questions the receipt of Gilmore's email by the BOP, as the Government was unable to confirm with the BOP that it received the request prior to filing its opposition, or if a response was issued by the BOP. Rec. Doc. 1604 at 7. The BOP must have the opportunity to review a defendant's compassionate release request prior to the defendant bringing a motion before the court. *See United States v. Gonzalez*, 849 Fed. App'x 116, 117 (5th Cir. 2021). Gilmore has included his email as an exhibit to the instant motion. Rec. Doc. 1596 at 11. Nonetheless, the Government still argues that this attachment is not sufficient, as it fails to prove delivery and receipt by the Warden or give information on whether a response was rendered. Rec.

Doc. 1596 at 4; *See also* Rec. Doc. 1612 at 2. While a petitioner's allegation alone is usually not sufficient to prove a request was made, here, the email attached is more than mere allegation alone. *United States v. Baker*, No. 16-179, 2020 WL 4584195, at *3 (E.D. La. Aug. 10, 2020) (finding that the defendant exhausted his remedies after 30 days passed from sending an email to the Warden without approval or denial); *Cf. United States v. Joseph*, No. 99-238, 2025 WL 1019391, at *4-5 (E.D. La. April 4, 2025) (finding that the defendant did not exhaust his remedies where he provided no evidence, and the Government could not obtain proof of receipt). Despite lack of confirmation by the BOP of receipt of Gilmore's email, his attached email indicates 30 days have passed from sending the Warden his request. Rec. Doc. 1596 at 4; *See also* Rec. Doc. 1604 at 6.

However, even if this court accepts that he sent his request, Gilmore did not exhaust his administrative remedies because he fails to identify the laws and facts supporting his compassionate release motion. *See* Rec. Doc. 1596 at 4. A defendant's request under § 3582(c)(1)(A) must identify "the extraordinary or compelling circumstances that the inmate believes warrant consideration and (2) proposed release plans, including where the inmate will reside, how the inmate will support himself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment and how the inmate will pay for such treatment." *United States v. Moore*, No. 07-273, 2025 WL 986050, at *2 (E.D. La. April 2, 2025) (quoting 28 C.F.R. § 571.61(a) (quotations omitted). Further, the facts asserted in the defendant's request to the Warden must be the same as those in his motion for compassionate release. *United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021).

Here, Gilmore's email reads "I would like to be considered for Compassionate Release pursuant to 18 U.S.C.§3582(c)(1)(A) [1B1.1(d)] Unusually Long Sentence. I believe my rehabilitation in combination with other circumstances is sufficient enough, plus I been

incarcerated over 21 years…." Rec. Doc. 1596 at 4. Though Gilmore's motion does address his rehabilitation and unusually long sentence, his motion also asks the court to consider the conditions of his confinement, his upbringing, and the U.S. Sentencing Guidelines amendment on young offenders. Rec. Doc. 1596 at 10. These issues were not raised in his initial letter to the Warden. Rec. Doc. 1596 at 4). Gilmore therefore fails to meet the exhaustion requirement under § 3582, warranting a denial of his motion for compassionate release.

Finally, Gilmore's contention that the exhaustion requirement can be waived here is incorrect. Rec. Doc. 1612 at 2.  Because it is a non-jurisdictional but mandatory claim processing rule, the Government may waive the exhaustion requirement. *See Ward v. United States,* 11 F.4th 354, 361 (5th Cir. 2021). Therefore, the requirement must be enforced unless waived by the Government. *United States v. Rivas*, 833 Fed. App'x 556, 559 (5th Cir. 2020). Waiver did not occur here because the Government raised the exhaustion issue in its opposition. *See Rivas,* 833 F.4th at 361: Rec. Doc. 1604.

### D. Extraordinary and Compelling Reasons

The Government avers that Gilmore cannot prove that extraordinary and compelling circumstances exist. Rec. Doc. 1604 at 8. Though the Government contests §1B1.13(b)(6)'s validity, this court need not discuss its validity because— though the Fifth Circuit has not elected to address the validity of 1B1.13(b)(6)—the Court recently held that "A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under §3582(c)(1)." *United States v. Austin*, 125 F.4th 688, 693 (5th Cir. 2025); Rec. Doc. 1604 at 8-9. Though the text of § 1B1.13(b)(6) seemingly allows nonretroactive changes in the law to "be considered in determining whether the defendant presents extraordinary and compelling reasons" the Commission must comply with Congressional directives. *Austin*, F.4th 125 at 692.

*Austin* clarifies that the Commission may not "make retroactive what Congress made non-retroactive. *Id*. (citing *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023). Further, the Commission may not overstep its authority by interpreting "extraordinary and compelling" in a way that conflicts with plain language or by "amend[ing] the statute [the court] construed] in *Escajeda* and its progeny." *Austin*, F.4th 125 at 692 (citing to *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023); *Neal v. United States*, 516 U.S. 284, 290 (1996); *United States v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017)). Thus, to the extent that Gilmore relies upon § 401 of the First Step Act of 2018 to reduce his life sentences, his argument fails. *See* Rec. Doc. 1612 at 11-12. Congress deliberately chose not to make this change retroactive to defendants already sentenced. *United States v. Staggers*, 961 F.3d 745, 753 (5th Cir. 2020). Thus, Gilmore cannot rely on a non-retroactive change in the law to support his motion for sentence reduction, as the court in *Austin* has described. *Austin*, F.4th 125 at 692 ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under §3582(c)(1).").

Gilmore's motion also relies on §404 the First Step Act of 2018, which made changes to the quantity of crack cocaine needed to trigger § 841 penalties from 50 grams to 280 grams retroactive. *See* Rec. Doc. 1596. Under the First Step Act, a defendant may be eligible for sentence reduction "under the First Step Act if: (1) he committed a covered offense; (2) his sentence was not previously imposed or reduced pursuant to the Fair Sentencing Act; and (3) he did not previously file a motion under the First Step Act that was denied on the merits." *United States v. Rodney*, No. 10-102, 2024 WL 3291749, at *1 (E.D. La. July 3, 2024) (internal citations omitted). A covered offense is defined as a violation of federal criminal statute that has its penalties modifies by section 2 or 3 of the Fair Sentencing Act of 2010, committed before August 3, 2010. *Id*. Section

404 is discretionary, allowing courts to reduce a sentence to reflect the revised crack cocaine penalties in effect today. *Id.*

In *United States v. Winters*, the court found that the defendant's conspiracy was a "covered offense" despite involving both crack and power cocaine, the latter of which was not changed by the Fair Sentencing Act. *United States v. Winters*, 986 F.3d 942, 948 (5th Cir. 2021). Similarly, though Gilmore's charge on Count 1 involves over one (1) kilogram of heroin—whose penalties were not changed under §404—Count 1 also involves more than 50 grams of crack whose penalties have changed under §404. *See* Rec. Doc. 1596 at 6. As Gilmore's Count 1 offense occurred before 2010, violated a federal criminal statute, and it now seems to be modified by the Fair Sentencing Act, it would be considered a "covered offense." *Id.* at 2, 6. However, Gilmore's instant motion for compassionate release fails because Gilmore is also serving a life sentence for Count 1, 12, 2 and 9. Rec. Doc. 1604 at 2-3. Though Gilmore avers that his life sentences cannot stand because he did not commit a crime of violence, count 12 for the violent crime in aid of racketeering murder of Anthony Cousin carried a mandatory life sentence at the time of sentencing and still carries that sentence. *See* Rec. Doc. 1612 at 12*;* 18 U.S.C. § 1959. § 1959 specifies that anyone involved in racketeering related murder, "[shall be punished] by death or life imprisonment, or a fine . . . ." *See* 18 U.S.C. § 1959(a)(1). Though Gilmore argues that § 401 First Step Act should change his life sentences on Count 1, Gilmore cannot rely on §401 for the reasons espoused in *Austin*. *See* Rec. Doc. 1612 at 12; *see* also *Austin*, F.4th 125 at 692. Thus, Gilmore fails to show a gross disparity would exist between his previous sentence and his current sentence.

Additionally, though Gilmore insists that the conditions of his confinement should be considered, generally "conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances" because they apply to all prisoners, not

just one. *United States v. Bolden*, No. 14-59, 2024 WL 5168159, at *7 (E.D. La. Dec. 19, 2024) (citing *United States v. Koons*, 455 F. Supp. 3d 385, 291 (W.D. La. 2020); *United States v. Iruegas*, No. 18-366, 2021 WL 1169348, at *2 (S.D. Tex. Mar. 25, 2021) (quotations omitted). Gilmore relies on *United States v. Macfarlane*, where a Court reduced the defendant's sentence during the COVID-19 pandemic, reasoning that the defendant's confinement for two weeks was equivalent to two months in his original prison assignment. Rec. Doc. 1596 at 9; *United States v. Mafarlane*, 438 F. Supp. 3d. 125, 127 (D. Mass. 2020). Though Gilmore does note that he spent two years in solitary confinement when initially sentenced, he does not provide details on the reasons for confinement. *See* Rec. Doc. 1596 at 8. Without details on why Gilmore was placed into solitary confinement, the court cannot properly assess whether Gilmore's confinement was a "result of [his] own" misconduct. *See United States v. Pinson*, No. H-08-283, 2023 WL 5985245, at *3 (S.D. Tex. Sept. 14, 2023) (denying defendant's motion for compassionate release, in part, because her time in solitary confinement was a "result of her own misconduct).

Gilmore also relies on Amendment 5H1.1 of the United States Sentencing Guidelines which provides that a downward departure may be considered due to a defendant's "youthfulness at the time of the offense or prior offenses." *See* Rec. Doc. 1596 at 10; U.S.S.G. § 5H.1. However, the 2024 Youthful Offender Amendment to the Sentencing Guidelines is not retroactive. *United States v. Cockerm*, No. 20-0195, 2024 WL 5081968, at *3 (W.D. La. Dec. 11, 2024) (holding that because the 2024 Youthful Offender Amendment to the Sentencing Guidelines was not made retroactive and therefore did not warrant recalculation of the defendant's sentence). Therefore, Gilmore's young age does not, on its own, warrant a sentence reduction.

Gilmore also asks the court to consider his upbringing and rehabilitation efforts in prison, which have included participating in classes, and self-reflection. Rec. Doc. 1596 at 9-10. Gilmore

includes a letter from his direct Federal Correctional Supervisor showing his rehabilitation. Rec. Doc. 1596-4, Rec. Doc. 1596 at 10. Congress has provided that rehabilitation alone is not an extraordinary and compelling reason for sentence reduction. *United States v. Surtain*, No. 07-30, 2025 WL 42699, at *5 (E.D. La. Jan. 2025) (citing 28 U.S.C. § 994(t)). Therefore, Gilmore does not present the extraordinary and compelling circumstances needed for compassionate release.

E.  **3553 Sentencing Factors:**

When evaluating a compassionate release motion, the final step the court must take is evaluating whether the factors in § 3553(a) independently support a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); § U.S.S.G. 1B1.13(a) ("The court may reduce a term of imprisonment. . . after considering the factors set forth in 18 U.S.C. § 3553(a) . . . ."). The Fifth circuit has expressly stated that the § 3553 factors offer "an alternative basis for denying relief". *United States v. Mcfadden*, No. 20-40801, 2022 WL 715489, at *3 (5th Cir. Mar. 9, 2022) (citing *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020)).

> In maintaining "a sentence sufficient but not greater than necessary," the Court evaluates Gilmore's compassionate release motion through the factors stated:
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote the respect for the law, and to provide just punishment for the offense
> (B) to afford adequate deterrence to criminal conduct
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. §3553(a).

The court's application of the § 3553 factors is discretionary. *See Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (Motions for compassionate

release are inherently discretionary. By statute, a district court may reduce an otherwise-eligible defendant's sentence 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'"); *Chambliss*, 948 F.3d at 693 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007). "Flexibility and discretion from rigid rules is particularly applicable when there is a motion to modify a sentence." *Ward*, 11 F.4th at 362.

Gilmore contends that he meets the sentencing factors because he has completed several courses while in prison, completed a prison program, has his family's support, and has not incurred any convictions or meaningful infractions in recent years. Rec. Doc. 1596 at 10: Rec. Doc. 1612 at 17. Gilmore argues his post-conviction rehabilitation is the most accurate picture of his "history and characteristics." *Id*. (citing *Pepper v. United States*, 562, U.S. 476, 492 (2011). In *United States v. Jackson*, the court denied defendant's motion to modify his sentence for murder because he was "a willing participant in a criminal enterprise that sold drugs and committed murder on a large scale." *United States v. Kevin Jackson*, No.12-001, 2024 WL 3275006 (E.D. La. July 2, 2024). Despite Gilmore's rehabilitation, Gilmore's crimes involved "regular and deliberate decisions to violate the law… [and] spontaneous violence." Rec. Doc. 1604 at 29. Gilmore's conduct, which involved "second degree-kidnapping, two murders, and the attempted murders of two additional people," is similar to that of the defendant in *Jackson*. *See* Rec. Doc 1604 at 30; *United States v. Kevin Jackson*, No.12-001, 2024 WL 3275006 (E.D. La. July 2, 2024). Thus, the nature and circumstances of his offense do not weight in Gilmore's favor.

Next, Gilmore's sentence is needed to reflect the seriousness of his crimes, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crime. *See* 18 U.S.C. §3553(a). Though Gilmore avers that denying his motion would not serve to protect the public or deter criminal conduct, the violent nature of Gilmore's crimes warrant public

safety concern. Rec. Doc. 1604 at 30; Rec. Doc. 1612 at 12. Other than rehabilitation efforts, Gilmore has not provided evidence that his history of violent crimes will not pose a risk to the public. *See* Rec. Doc. 1612; Rec. Doc. 1596. Further, the BOP director has made no determination concerning this issue. *See* Rec. Doc. 1596 at 5.

Next, the remainder of the sentencing factors weigh against Gilmore's release as his sentence is just punishment for murder, and reflects the plea deal that Gilmore took to avoid the possibility of the death penalty. In *United States v. Metz,* the court denied the defendant's motion for compassionate release, finding his life sentence for murder "promotes respect for the law reflects the seriousness of his offenses, and provides just punishment for them." *United States v. Metz*, 2021 WL 3033317, at *5 (E.D. La. July 19, 2021). The Court in *Metz* also concluded that the sentence would help deter others from engaging in the organized and violent crimes the defendant engaged in. *Id*. Similarly here, Gilmore's criminal activity involved "firearms, large quantities of drug trafficking, shootings, attempted murders and multiple murders." Rec. Doc. 1604 at 31. Thus, Gilmore's life sentence properly reflects reflect the seriousness of his crimes, promote respect for the law, provides just punishment, deters criminal conduct, and protects the public from further crime. Further, Gilmore notes that he taken classes during his time in prison, indicating his sentence allows for education and vocational training, medical care and other treatment. Rec. Doc. 1596 at 10.

New Orleans, Louisiana this 7th day of January 2026

_____
SENIOR UNITED STATES DISTRICT JUDGE